BRIEF FOR APPELLEE

---

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

NO. 12-4282

———————————

UNITED STATES OF AMERICA,

Appellee,

v.

BOBBIE LYNN PEREZ, a/k/a Bobbie Lynn Wallace

Appellant.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

---

BRIEF OF THE UNITED STATES

---

THOMAS G. WALKER
United States Attorney

BY: JENNIFER P. MAY-PARKER
JOSHUA L. ROGERS
Assistant United States Attorneys
310 New Bern Avenue
Suite 800
Raleigh, North Carolina 27601
Telephone: (919) 856-4530
Attorneys for Appellee

---

---

TABLE OF CONTENTS

TABLE OF AUTHORITIES..........................................ii

STATEMENT OF JURISDICTION......................................1

STATEMENT OF ISSUES...........................................2

STATEMENT OF CASE.............................................3

STATEMENT OF FACTS............................................4

SUMMARY OF ARGUMENT..........................................15

ARGUMENT....................................................16

I.     THE COURT WAS NOT REQUIRED TO PROVIDE NOTICE OF
       AN UPWARD VARIANCE....................................16

       A.    Standard of Review..............................16

       B.    Discussion of Issue.............................16

II.    DEFENDANT'S SENTENCE WAS PROCEDURALLY REASONABLE.........18

       A.    Standard of Review..............................18

       B.    Discussion of Issue.............................18

III.   DEFENDANT'S SENTENCE WAS SUBSTANTIVELY REASONABLE........20

       A.    Standard of Review..............................20

       B.    Discussion of Issue.............................20

CONCLUSION..................................................25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

TABLE OF AUTHORITIES

CASES

Burns v. United States, 501 U.S. 129 (1991)....................17

Gall v. United States, 552 U.S. 38 (2007).................19, 21

Irizarry v. United States, 553 U.S. 708 (2008).............16-18

United States v. Cameron, 340 F. App'x 872
   (4th Cir. 2009) (unpublished)...........................17-18

United States v. Diosdado-Star, 630 F.3d 359 (4th Cir.),
   cert. denied, 131 S. Ct. 2946 (2011)....................16, 19

United States v. Evans, 526 F.3d 155 (4th Cir. 2008)...........21

United States v. Fancher, 513 F.3d 424 (4th Cir. 2008)........17

United States v. Harvey, 532 F.3d 326 (4th Cir. 2008).........18

United States v. Marrone, 292 F. App'x 253 (4th Cir. 2008)
   (unpublished)...............................................16

United States v. Mendoza-Mendoza, 597 F.3d 212
   (4th Cir. 2010).........................................18-20

United States v. Morace, 594 F.3d 340 (4th Cir. 2010).......20-21

United States v. Muhammad, 478 F.3d 247 (4th Cir. 2007).......16

United States v. Olano, 507 U.S. 725 (1993)...................16

United States v. Pauley, 511 F.3d 468 (4th Cir. 2007).........21

United States v. Perez, 661 F.3d 189 (4th. Cir. 2011)......18, 20

United States v. Rivera-Santana, 668 F.3d 95
   (4th Cir. 2012).............................................22

STATUTES

18 U.S.C. § 1341................................................3

18 U.S.C. § 1343................................................3

18 U.S.C. § 3231....................................................1

18 U.S.C. § 3553...................................................17

18 U.S.C. § 3553(a).............................................passim

18 U.S.C. § 3553(a)(2)(A)..........................................23

18 U.S.C. § 3553(a)(2)(B)..........................................23

18 U.S.C. § 3553(a)(2)(C)..........................................23

18 U.S.C. § 3553(a)(2)(D)..........................................23

18 U.S.C. § 3742(a).................................................1

28 U.S.C. § 1291...................................................1

<u>RULES</u>

Fed. R. Crim. P. 32(h) .........................................15–17

<u>SENTENCING GUIDELINES</u>

USSG §2B1.1.......................................................7, 8

USSG §2B1.1(b)(1)(C)................................................7

USSG §2B1.1, comment. (n.3)(A)(i).................................19

USSG §2B1.1, comment. (n.3)(A)(ii)...............................19

USSG §3A1.1(b).....................................................7

USSG §3E1.1(a).....................................................7

## STATEMENT OF JURISDICTION

Defendant appeals from a judgment of conviction following a guilty plea. Jurisdiction to the district court was established by 18 U.S.C. § 3231.

Jurisdiction to this Court is provided by 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The judgment was entered on April 11, 2012, and Defendant filed a timely notice of appeal the same day.

## STATEMENT OF ISSUES

1.  Whether the court plainly erred when it did not provide Defendant notice of its upward variance.

2.  Whether Defendant's sentence was procedurally reasonable.

3.  Whether Defendant's sentence was substantively reasonable.

## STATEMENT OF CASE

On December 14, 2010, Defendant Bobbie Lynn Perez was charged in a four-count indictment with mail fraud, in violation of 18 U.S.C. § 1341 (Count One), and wire fraud, in violation of 18 U.S.C. § 1343 (Counts Two, Three, and Four). (J.A. 8-15).

On October 13, 2011, Defendant pleaded guilty to all counts without a plea agreement. (J.A. 16-38). The district court sentenced Defendant to a term of 48 months' imprisonment. (J.A. 82-86, 91). In addition, the court ordered that Defendant be placed on supervised release for three years for each count, to be served concurrently. (J.A. 83, 92). Thereafter, Defendant filed a timely notice of appeal. (J.A. 96).

STATEMENT OF FACTS

Offense Conduct

In May of 2010, the Federal Bureau of Investigation (FBI) began investigating Defendant after receiving information that, while pregnant, Defendant defrauded at least three prospectively adoptive families by agreeing to place her unborn child with each family in exchange for financial support during the pregnancy. (J.A. 100, ¶ 4; J.A. 103, ¶¶ 8-9). Defendant delivered her baby on May 2, 2010, and from February 2010 until June 2010, she defrauded the three families of a total of $11,897. (J.A. 100-02, ¶¶ 4-6; J.A. 103, ¶¶ 8-9).

Around January or February of 2011, Defendant located her first prospective family when she contacted R.R., who had previously adopted two of Defendant's children. (J.A. 100-01, ¶¶ 4-5). Defendant told R.R. she had been gang-raped in August or September of 2009, resulting in an unwanted pregnancy. (J.A. 100, ¶ 4). R.R. agreed to adopt Defendant's child and thereafter accompanied Defendant for her first ultrasound.[1] (J.A. 100, ¶ 4). R.R. learned that the due date for the baby was July 11, 2010; and between March 4, 2010, and June 18, 2010, R.R. wired $2,293 to Defendant, believing that the money would

---

[1] During the ultrasound, R.R. noticed that the child could not have been conceived until late October 2009, one to two months after the alleged rape, but she disregarded the discrepancy. (J.A. 100, ¶ 4).

be used to purchase necessities and provide care for the unborn child. (J.A. 100-01, ¶ 4). Although Defendant delivered the baby prematurely on May 2, 2010, and the baby was adopted on May 5, 2011, Defendant did not disclose these facts to R.R., who sent a final payment to Defendant on June 18, 2012. (J.A. 103, ¶ 8; J.A. 113, ¶ 2).

On February 19, 2010, Defendant used an adoption agency in New York to locate a second prospective family, T.M. and S.K., who agreed to adopt her unborn child. (J.A. 101, ¶ 5). Between February 25, 2010, and May 7, 2010, T.M. and S.K. wired $4,854 to Defendant.[2] (J.A. 101, ¶ 5). On May 2, 2011, Defendant delivered the child, and on May 5, 2011, T.M. and S.K. adopted the child. (J.A. 103, ¶ 8; J.A. 113, ¶ 2).

On March 25, 2010, Defendant used a different adoption agency to locate another prospective parent, K.E., in North Carolina. (J.A. 102, ¶ 6; J.A. 103, ¶ 9). Between March 26, 2010, and April 18, 2010, K.E. mailed checks and wired money in the amount of $4,250 to Defendant. (J.A. 102, ¶ 6; J.A. 103, ¶ 9). In early May of 2010, after K.E.'s last transfer of funds to Defendant, K.E. began having difficulty reaching Defendant. (J.A. 102, ¶ 7; J.A. 113, ¶ 2). When K.E. finally reached a family member of Defendant's, the person said Defendant could

---

[2] T.M. and S.K. paid the highest amount of money to Defendant during her fraudulent adoption scheme. (J.A. 100-02, ¶¶ 4-6).

not come to the telephone because she had been out partying all night. (J.A. 102, ¶ 7). K.E. became concerned about the health of the child, so she legally obtained Defendant's medical records as they pertained to Defendant's pregnancy. (J.A. 102, ¶ 7). K.E. concluded she had been defrauded after reviewing the medical records and discovering that Defendant was simultaneously working with at least two other prospective adoptive families. (J.A. 102, ¶ 7). Soon thereafter, law enforcement officials learned of Defendant's adoption scheme and began investigating Defendant. (J.A. 113, ¶ 2).

T.M. and S.K., as well as the other two families who had been defrauded by Defendant, told investigators that they each believed they were the only family with whom Defendant was working. (J.A. 103, ¶ 8; J.A. 113, ¶ 2). All three families also independently told investigators that, had they known Defendant was simultaneously offering her child to the other families, they would not have provided financial support to Defendant. (J.A. 113-14, ¶ 2).

It is unknown whether any of the financial support provided to Defendant actually went to her medical expenses; however, records from the Riverside Resort Hotel and Casino show that Defendant—a cash only player—gambled at least $16,011 between March 5, 2010, and May 17, 2010, and was unemployed throughout that period. (J.A. 101, ¶ 4 n.2; J.A. 114, ¶ 2).

The United States Probation Office conducted a presentence investigation and prepared Defendant's presentence investigation report (PSR). (J.A. 98-112).

Defendant's base offense level was seven, pursuant to USSG §2B1.1. (J.A. 110, ¶ 37). Because the loss to the victims was more than $10,000, but less than $30,000, the probation officer added four levels, pursuant to USSG §2B1.1(b)(1)(C). (J.A. 110, ¶ 38). The probation officer added two levels, pursuant to USSG §3A1.1(b), because Defendant knew or should have known the victims were vulnerable. (J.A. 110, ¶ 39). Pursuant to USSG §3E1.1(a), the offense level was decreased by two levels to reflect Defendant's acceptance of responsibility, bringing Defendant's total offense level to 11. (J.A. 110, ¶ 44-45).

Defendant's seven criminal history points placed her in criminal history category IV. (J.A. 106, ¶ 19; J.A. 110, ¶ 46). An offense level 11 and criminal history category IV resulted in a recommended guidelines range of 18 to 24 months' imprisonment. (J.A. 110, ¶ 48).

Defendant lodged an objection to the probation officer's calculation of monetary loss to the victims, claiming that the $4,854 provided to her by T.M. and S.K. should not have been included in the loss calculation. (J.A. 113, ¶ 1; see also (J.A. 48-58). According to Defendant, the $4,854 did not fit

the definitions of actual or intended loss under §2B1.1, because the couple was ultimately allowed to adopt the child. (J.A. 113, ¶ 1). Therefore, Defendant argued, the total offense level should be nine, which would have resulted in a recommended guidelines range of twelve to eighteen months' imprisonment. (J.A. 113, ¶ 1). Defendant also argued that, because T.M. and S.K. adopted the child, they were not entitled to restitution, and noted that the couple had filed affidavits stating that they did not wish to receive restitution. (J.A. 113, ¶ 1; see also J.A. 53-58).

The probation officer responded that Defendant promised her child to T.M. and S.K., while simultaneously deceiving two other parties that they would also be the adoptive parents of her unborn child. (J.A. 113, ¶ 2). The probation officer also stated that all three prospective adoptive families "confirmed their belief that they were the only families working with [Defendant]," and that, "had they known that [Defendant] was receiving money from other couples in anticipation of adopting her unborn child, they would not have provided [Defendant] with any financial support." (J.A. 113-14, ¶ 2). The probation officer also noted that although it was unknown whether any of the money was actually used for Defendant's medical expenses, it was known that Defendant spent at least $16,000, while

unemployed, at the Riverside Resort Hotel and Casino during the time period in question. (J.A. 114, ¶ 2).

## Defendant's Sentencing Hearing

On April 2, 2012, the court held Defendant's sentencing hearing, during which Defendant reiterated her objection to including, for the purposes of calculating the loss to the victims, the $4,854 paid by T.M. and S.K. (J.A. 63). Government counsel responded that Defendant successfully defrauded all of the prospective parents of money, which she spent at a casino, and led all of the victims to believe she was giving her child to them alone. (J.A. 64; see also J.A. 36-37). Government counsel also noted that all of the victims—including T.M. and S.K.—stated that Defendant would not have received any money from them if they had known Defendant was promising the same child to others. (J.A. 64-65). Government counsel argued that, because Defendant intentionally took the full amount, which was procured through fraud, and gambled it, Defendant should be liable for the full amount. (J.A. 64-65).

The court overruled Defendant's objection, as it pertained to the loss calculation, and found that all of the prospective parents were defrauded, including T.M. and S.K., and noted that they told investigators "that if they had known that this was going on they would not have given the defendant money." (J.A. 65-66). The court sustained the Defendant's objection

9

pertaining to the restitution amount, because T.M. and S.K. had disavowed restitution, leaving Defendant with $7,043 in restitution to be paid to R.R. and K.E. (J.A. 66-67). The government then recommended a sentence at the high end of the 18 to 24-month guidelines range, and Defendant recommended a sentence "within the guideline[s] range." (J.A. 68).

While defense counsel emphasized Defendant's struggles with substance abuse, government counsel emphasized the immeasurable emotional harm done to the victims. (J.A. 70). Government counsel cited the fact that Defendant had taken one of the prospective parents to an ultrasound with her, that she sent photographs and updates to another couple, and that one adoptive couple had even purchased a car seat so they could be ready to pick up the child when it was born. (J.A. 70-71).

During government counsel's argument, the court asked a United States Probation Officer to describe Defendant's activities while on pretrial release. (J.A. 72). The probation officer stated that Defendant absconded supervision and was arrested; and after being rereleased, Defendant was arrested a second time for violating the terms of her pretrial release. (J.A. 72). Government counsel explained to the court that Defendant was arrested the second time because she had gotten pregnant again and was soliciting more money from T.M. and S.K., promising to give them another child after it was born. (J.A.

72).  According to government counsel, Defendant took the money she received from T.M. and S.K. and used it to purchase narcotics.[3]  (J.A. 72).

Government counsel read a letter into the record from T.M. and S.K. which was generally supportive of Defendant and expressed gratitude that she had given up her last two children to them for adoption.  (J.A. 74-75).  The United States then called K.E., the victim from North Carolina, to testify.  (J.A. 75).  K.E. testified that Defendant lied to her multiple times throughout the adoption process, including lies about the circumstances surrounding the pregnancy (Defendant claimed to have been violently gang-raped) and her need for rent money, food, and medical treatment.  (J.A. 76-77).

K.E. testified that at one point, Defendant called her and said she was dilated three centimeters, that her doctor had been fired, and that she needed more money because she did not know how she was going to deliver the baby.  (J.A. 77).  K.E. testified as follows:

> I said, well, let's get your medical record . . .
> Let's see how we can make sure that you're safe. And
> meanwhile, I've got my bags packed. My family's on
> high alert. I've got a nursery set up. I've had a baby
> shower.  I believe that I'm about to be a mom for the
> second time for the baby that she's carrying.

---

[3] Government counsel also provided a litany of examples of Defendant's violations of court orders.  (J.A. 73).

(J.A. 77). K.E. testified that after she received Defendant's medical records, she discovered that Defendant had been dealing with other adoption agencies with the instant pregnancy and that she had been pregnant multiple times.[4] (J.A. 78). K.E. also realized that although Defendant had provided medical records in the past, Defendant had altered the due date and ultrasound records. (J.A. 78-79). K.E. testified that after she began investigating further, Defendant called her, "furious, screaming, and says, 'You can't have the baby.'" (J.A. 79). K.E. said:

> [P]lease don't let the measure of this crime be the amount of money she took from me. It's not the measure. Giving me back the money is not going to make me whole. . . . I can't ever get back what she did to me. I can't ever get back what she did to my little girl, who was helping me to come up with names, who was helping me decorate the nursery, who was helping us get the car-seats installed and packing the bags . . .
>
> You know, I can't ever get back the weekend we spent . . . with my dad and my mom driving back to everybody who had given us presents, to deliver them back, because we had to erase all signs of the baby from the house that weekend so that I could go on.

(J.A. 80).

After hearing K.E.'s testimony, the court adopted the findings of presentence report and stated, "I don't believe that the guideline advice in this case resonates and accomplishes the

---

[4] Defendant had, in fact, been pregnant at least 16 times. (J.A. 106-07, ¶ 23).

purposes of sentencing." (J.A. 82; <u>see also</u> J.A. 83). The court stated that it would sentence Defendant to 48 months imprisonment and explained, "The term of incarceration is one that will promote respect for the law, that will discourage this type of conduct, and will protect the public from you. You're a predator, and there is an immense need to protect the public." (J.A. 83). The court also added that, in light of the "substantial nonmonetary harm" caused by Defendant, it could have also upwardly departed from the guidelines. (J.A. 84-85). The court explained:

> At least two of the three families expecting to adopt your child suffered significant emotional trauma when they discovered that they had been defrauded monetarily and emotionally and would not be adopting a child.

> As a result, the established offense level could well be said to substantially understate the seriousness of the offense and warrant an upward departure the requisite number of levels to reach the sentence of 48 months.

(J.A. 85).

Pursuant to § 3553(a), the court sentenced Defendant to 48 months' imprisonment on each count, to be served concurrently, and ordered her to pay $7,043 in restitution. (J.A. 82-84). The court also noted that, as a condition of her sentence, it had included "the most intensive substance-abuse treatment program that the Bureau can make

available, mental health treatment, and also vocational training." (J.A. 83).

<u>SUMMARY OF ARGUMENT</u>

1.    The court was not required to provide notice of its upward variance, because Federal Rule of Criminal Procedure 32(h) does not apply to upward variances.   Therefore, the court did not plainly err when it did not provide notice of the upward variance.

2.    Defendant's sentence was procedurally reasonable.   The court's finding that T.M. and S.K. suffered a loss, due to Defendant's fraud, was not clearly erroneous; and therefore, it properly calculated the guidelines when it included, for the purposes of calculating the loss to the victims, the $4,854 paid to Defendant by T.M. and S.K.

3.    Defendant's sentence was substantively reasonable.   In the face of a crime that defrauded three families, the court provided a profound and adequate explanation for its sentence. Moreover, the court heard Defendant on the issue of her substance abuse and mental health issues and addressed those issues by ordering "the most intensive substance-abuse [and mental health] treatment program that the Bureau can make available."   Therefore, Defendant's arguments that the court failed to consider her substance abuse and mental health issues and fully explain its sentence are meritless.

ARGUMENT

I. THE COURT WAS NOT REQUIRED TO PROVIDE NOTICE OF AN UPWARD VARIANCE.

A. Standard of Review.

Where a party raises an issue for the first time on appeal, this Court reviews the issue for plain error. United States v. Muhammad, 478 F.3d 247, 249 (4th Cir. 2007).

B. Discussion of Issue.

For the first time on appeal, Defendant claims the court was obligated to provide notice of a possible upward departure or variance.[5] (Brief at 5-8). Because Defendant raises this issue for the first time on appeal, her claim is reviewed for plain error. See United States v. Olano, 507 U.S. 725, 732 (1993) (holding that, to demonstrate plain error, a defendant must show (1) that an error occurred, (2) that it was plain, and (3) that it affected the defendant's substantial rights).

As a general matter, the district court has discretion to impose an upward variance in choosing a sentence outside of the guidelines. United States v. Diosdado-Star, 630 F.3d 359, 364 (4th Cir.), cert. denied, 131 S. Ct. 2946 (2011). And the

---

[5] Defendant claims she preserved this issue for appeal when the court announced its upward departure and acknowledged Defendant's objection to it. (Brief at 5-6). However, Defendant "did not object to the lack of notice in the district court," and therefore, "review of this issue is for plain error." See United States v. Marrone, 292 F. App'x 253, 255 (4th Cir. 2008) (unpublished).

notice requirements of Federal Rule of Criminal Procedural 32(h) do not apply to upward variances. Irizarry v. United States, 553 U.S. 708, 714 (2008).

In imposing the 24-month variance, the district court emphasized that it was not convinced that the advice of the guidelines accomplished the purposes of sentencing, and stated that therefore, "I've turned very directly to 18 United States Code, Section 3553." (J.A. 82). The court then described a litany of the § 3553(a) factors it had considered in determining Defendant's 48-month sentence. (J.A. 82-83). Therefore, because the record shows that the district court varied based on its consideration of the § 3553(a) factors, Defendant was not entitled to prior notice under Rule 32(h).

Defendant cites Burns v. United States, 501 U.S. 129 (1991), for the proposition that Rule 32(h) may require notice of a variance; however, this is unavailing, because in Irizarry, the Court overruled Burns and held that Rule 32(h) "does not apply to 18 U.S.C. § 3553 variances by its terms." Irizarry, 553 U.S. at 714. Accordingly, Defendant's citation to United States v. Fancher, 513 F.3d 424 (4th Cir. 2008), is also unavailing, because this Circuit has noted that, "after Fancher, the Supreme Court . . . conclud[ed] that Rule 32(h) does not apply to variances." United States v. Cameron, 340 F. App'x 872, 873 (4th Cir. 2009) (unpublished) (citing Irizarry, 553

U.S. at 713). There was no error, let alone plain error, and Defendant's argument is therefore legally unsound.

II.  DEFENDANT'S SENTENCE WAS PROCEDURALLY REASONABLE.

     A.  Standard of Review.

Criminal sentences are reviewed for reasonableness under an abuse-of-discretion standard, which has both substantive and procedural elements. United States v. Perez, 661 F.3d 189, 192 (4th. Cir. 2011); United States v. Mendoza-Mendoza, 597 F.3d 212, 216 (4th Cir. 2010). "In assessing whether a sentencing court properly applied the Guidelines, [this Court] review[s] the court's factual findings for clear error and its legal conclusions de novo." United States v. Harvey, 532 F.3d 326, 336 (4th Cir. 2008) (citations, internal quotations, and alterations omitted).

     B.  Discussion of Issue.

Defendant argues that the Court procedurally erred when it failed to properly calculate the guidelines and included, for the purposes of calculating the loss to the victims, the $4,854 paid to Defendant by T.M. and S.K. (Brief at 12-14). The court did not clearly err when it found that T.M. and S.K. were defrauded by Defendant. Defendant's argument therefore fails.

Procedural unreasonableness "evaluates the method used to determine a defendant's sentence." United States v. Mendoza-Mendoza, 597 F.3d 212, 216 (4th Cir. 2010). Procedural

18

sentencing errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." United States v. Diosdado-Star, 630 F.3d 359, 363 (4th Cir. 2011), cert denied, 131 S. Ct. 2946 (May 31, 2011) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).

Defendant argues that, because T.M. and S.K. were ultimately allowed to adopt Defendant's child, the court improperly calculated the guidelines range when it found, as a factual matter, that the couple was defrauded of $4,854 by Defendant. (Brief at 12-13).

Under the guidelines, "actual loss" is the "reasonably foreseeable pecuniary harm that resulted from the offense." USSG §2B1.1, comment. (n.3)(A)(i). "Intended loss" is the "pecuniary harm that was intended to result from the offense." USSG §2B1.1, comment. (n.3)(A)(ii).

Defendant intentionally deceived all three families into providing large sums of gambling money, and she led these families to believe that: (1) they were the only family working with her; and (2) that the money was being used for the welfare of Defendant and her unborn child. (J.A. 101, ¶ 4 n.2; J.A.

103, ¶ 8; J.A. 113-14, ¶ 2).  The court therefore rightly found that all of the prospective parents were defrauded, including T.M. and S.K., who told investigators "that if they had known that this was going on they would not have given the defendant money." (J.A. 65-66).  Defendant knew this, and that is why she misled each of the families; and regardless of the fact that Defendant ultimately allowed T.M. and S.K. to adopt her baby, they were only allowed to do so after being monetarily defrauded of $4,854.  (J.A. 100-02, ¶¶ 4-6; J.A. 103, ¶¶ 8-9).  And even if Defendant could have proven that she used a fraction of the money for legitimate purposes, it does not change the fact that she would not have obtained any of it from these three families without defrauding them first.  Therefore, the court's finding that T.M. and S.K. suffered a loss, due to Defendant's fraud, was not clearly erroneous.  Defendant's argument has no merit.

III. DEFENDANT'S SENTENCE WAS SUBSTANTIVELY REASONABLE.

   A.   <u>Standard of Review</u>.

   Criminal sentences are reviewed for reasonableness under an abuse-of-discretion standard.  <u>United States v. Perez</u>, 661 F.3d 189, 192 (4th. Cir. 2011); <u>United States v. Mendoza-Mendoza</u>, 597 F.3d 212, 216 (4th Cir. 2010).

   B.   <u>Discussion of Issue</u>.

   If the court finds "no significant procedural error," it then assesses the substantive reasonableness of the sentence,

taking "into account the totality of the circumstances, including the extent of any variance from the Guidelines range." United States v. Morace, 594 F.3d 340, 345–46 (4th Cir. 2010) (citations and internal quotations omitted). If a court sentences a defendant outside the guidelines range, it "'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" United States v. Pauley, 511 F.3d 468, 473 (4th Cir. 2007) (quoting Gall v. United States, 552 U.S. 38, 50 (2007)). A "'major departure should be supported by a more significant justification than a minor one.'" Pauley, 511 F.3d at 473 (quoting Gall, 552 U.S. at 50). "But a district court need not justify a sentence outside the Guidelines range with a finding of extraordinary circumstances." United States v. Evans, 526 F.3d 155, 161 (4th Cir. 2008) (internal quotation marks omitted); see also Gall, 552 U.S. at 51 (holding that appellate courts "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify" the sentence imposed).

Defendant claims that the district court "abused its discretion in imposing an upward[] departure twice the upper guideline range without detailed justification," and in doing

so, neglected to consider Defendant's substance abuse and mental health issues.[6] (Brief at 8-12).

The district court heard argument from defense counsel on the appropriate sentence; and during that argument, defense counsel detailed Defendant's struggles with substance abuse and its effects on her mental health. (J.A. 69-70). The court also heard argument from government counsel regarding Defendant's willful manipulation of the victims. (J.A. 70-71). Government counsel informed the court that Defendant had absconded while on pretrial release, gotten pregnant again, and contacted one of the victim-families, promising her unborn child and successfully soliciting money, which she used to purchase narcotics. (J.A. 72). The court also heard heart-wrenching testimony from K.E., who testified that Defendant lied to her, manipulated her, and left her and her family devastated by the loss of a child Defendant never intended to give to her. (J.A. 76-80).

---

[6] Although Defendant complains about the substantive reasonableness of court's "upward[] departure," her argument addresses the substantive reasonableness of the court's upward <u>variance</u> under the § 3553(a) factors. (Brief at 8-12). Because the court based its sentence on a finding pursuant to § 3553(a), in its brief, the United States addresses the substantive reasonableness of the variance. <u>Cf.</u> <u>United States v. Rivera-Santana</u>, 668 F.3d 95, 100 n.6 (4th Cir. 2012) (noting that a "departure is a sentence imposed under the framework set out in the Guidelines"; and "[c]onversely, a variance has been recognized as a non-Guidelines sentence . . . that is nevertheless justified under the sentencing factors set forth in 18 U.S.C. § 3553(a)") (internal quotation marks omitted).

After considering this evidence, the district court described the various factors under § 3553(a) it considered in imposing the 24-month variance. (J.A. 69-70, 82-83). The court explained that it had chosen the 48-month sentence after it had considered the need to fashion a sentence that was sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, to deter criminal conduct, to protect the public, and to provide needed treatment or care. (J.A. 82-83); see 18 U.S.C. § 3553(a)(2)(A)-(C). And the court noted that, as a condition of Defendant's sentence, it had included "the most intensive substance-abuse treatment program that the Bureau can make available, mental health treatment, and also vocational training." (J.A. 83); see 18 U.S.C. § 3553(a)(2)(D).

In the face of a plethora of evidence that Defendant preyed on three adoptive families, inducing them to provide gambling money for her under the impression that they were providing for Defendant and her unborn child, the court provided a compelling and sufficient explanation for its upward variance: "You're a predator, and there is an immense need to protect the public." (J.A. 83). The court also emphasized the emotional damage Defendant had caused, noting, "At least two of the three families expecting to adopt your child suffered significant emotional trauma when they discovered that they had been

defrauded monetarily and emotionally and would not be adopting a child." (J.A. 85). While the court's explanation may not have been lengthy, the court's chosen language captured the full essence of Defendant's crime. That is, by referring to Defendant as a "predator" who inflicted "significant emotional trauma" on three families (J.A. 83, 85), the court succinctly emphasized the appropriateness of an upward variance under circumstances where Defendant had carelessly preyed on innocent families, devastating them for the sake of her own financial gain.

Moreover, the court heard Defendant on the issue of her substance abuse and mental health issues and addressed those issues by ordering "the most intensive substance-abuse [and mental health] treatment program that the Bureau can make available." (J.A. 83). Therefore, Defendant's arguments that the court substantively erred by failing to sufficiently explain its sentence and consider her substance abuse and mental health issues are meritless.

## CONCLUSION

For the foregoing reasons, the United States submits that Defendant's conviction should be affirmed.

Respectfully submitted, this 10th day of September, 2012.

THOMAS G. WALKER
United States Attorney

BY: /s/ Joshua L. Rogers
JOSHUA L. ROGERS
Assistant United States Attorney
310 New Bern Avenue
Suite 800, Federal Building
Raleigh, North Carolina 27601-1461
Telephone: 919-856-4530

JENNIFER P. MAY-PARKER
Assistant United States Attorney
Of Counsel

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS

TO BE INCLUDED IMMEDIATELY BEFORE THE CERTIFICATE OF SERVICE FOR ALL BRIEFS FILED IN THIS COURT

1. This brief has been prepared using (SELECT AND COMPLETE ONLY ONE):

_____    Fourteen point, proportionally spaced, serif typeface (such as CG Times or Times New Roman, NOT Sans Serif typeface such as Arial). Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, CG Times, 14 point):

_____

__X__    Twelve point, monospaced typeface (such as Courier or Courier New). Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, Courier New, 12 point):

_Microsoft Word 2010, Courier New, 12 point_____

2. EXCLUSIVE of the corporate disclosure statement, table of contents, table of citations, state with respect to oral argument, any addendum containing statutes, rules, or regulations, and the certificate of service, the brief contains (SELECT AND COMPLETE ONLY ONE):

__X__  _25_    Pages (give specific number of pages; may not exceed 30 pages for opening or answering brief or 15 pages for reply brief); OR

_____  __    Words (give specific number of words; may not exceed 14,000 words for opening or answering brief or 7,000 for reply brief); OR

_____  ___    Lines of Monospaced Type (give specific number of lines; may not exceed 1,300 lines for opening or answering brief or 650 for reply brief; may be used ONLY for briefs prepared in monospaced type such as Courier or Courier New).

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

                                   _/s/ Joshua L. Rogers_____
                                   Joshua L. Rogers
                                   Signature of Filing Party

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user:

    Jane C. Norman
    BOND & NORMAN

                        /s/ Joshua L. Rogers
                        JOSHUA L. ROGERS
                        Assistant United States Attorney